UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| EUGENE KA LOK WONG,<br><br>     Petitioner,<br>vs.<br><br>WARDEN, YANKTON FEDERAL PRISON CAMP,<br><br>     Respondent. | 4:24-CV-04117-CBK<br><br>MEMORORANDUM OPINION AND ORDER |

  Petitioner, a prisoner at the Bureau of Prison's ("BOP") Federal Prison Camp in Yankton, South Dakota, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the BOP's calculation of his First Step Act Time Credits and thus, the date he is eligible for release. Respondent has filed a motion to dismiss.

  On December 21, 2018, Congress enacted the First Step Act of 2018, which added subchapter D to Chapter 29 of title 18, United States Code, §§ 3631 – 3635. Pub. L. 115-391, Sec. 101, 132 Stat. 5194. The Act further added subsection (h) to 18 U.S.C. § 2621 (Imprisonment of Convicted Persons). Pub. L. 115-391, Sec. 102, 132 Stat. 5208. The Act required the development of an evidence-based recidivism reduction ("EBRR") program. Congress directed that the "System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs," including earning time credits for participating in such programs. 18 U.S.C. § 3632. The BOP administers such credits, which the BOP now refers to as "FSA Time Credits" or "FTC," pursuant to the Federal Bureau of Prisons Program Statement 5410.01.

  Congress directed the BOP to develop and release a "risk and needs assessment system" within 210 days of the enactment of the First Step Act. 18 U.S.C. § 3632(a). Congress directed that not later than 180 days thereafter, the BOP shall "complete the initial intake risk and needs assessment for each prisoner . . . and begin to assign

prisoners to appropriate evidence-based recidivism reduction programs." 18 U.S.C. § 2621(h)(1)(A). During the phase-in period, the BOP was required to provide EBRR programs and productive activities for all prisoners before two years after the date of completion of the risk and needs assessment for each prisoner. 18 U.S.C. § 2621(h)(1)(A). Finally, as relevant here, the BOP is required to "**provide all prisoners with the opportunity to actively participate in [EBRR] programs . . . throughout their entire term of incarceration.**" 18 U.S.C. § 2621(h)(6).

The First Step Act was enacted on December 18, 2018. The BOP's final rule, codifying BOP procedures for implementation of the First Step Act, was published January 19, 2022, FSA Time Credits, 87 FR 2705-0, and subsequently codified at 28 CFR Part 523, in a new Subpart E. In its response to comments on the initial rule, the BOP asserted that it had developed the required risk and needs assessment tool, which the BOP calls the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("Pattern"), on July 19, 2019, which was within the 210 days as required by Congress. FSA Time Credits, 87 FR 2707. The BOP further asserted that it had assigned an initial PATTERN risk level to each inmate by January 15, 2020, which was within the 180 days statutory deadline for doing so. *Id.*

In its discussion of the comments made during rulemaking, the BOP extensively discussed the beginning date for then-current inmates to begin receiving FSA time credits. The final rule allowed eligible inmates to receive retroactive time credits for participating in programming and activities they participated in starting on the date of enactment of the First Step Act, affording inmates a presumption of participation for the period between December 21, 2018, and January 14, 2020, the time during which the BOP did not have a mechanism in place to track inmate participation. FSA Time Credits, 87 FR 2708.

Pursuant to 28 CFR Part 523.42(a), "[a]n eligible inmate begins earning FSA Time Credits **after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).**" Further, "[a]n eligible inmate . . . may earn FSA Time Credit

2

if he or she is successfully participating in EBRR programs or PAs [productive activities] that the Bureau has recommended based on the inmate's individualized risk and needs assessment." 28 CFR Part 523.42(b)(2). As will be apparent below, in this case the BOP's final rule for the start date that an inmate may earn FSA Time Credits is contrary to Congress's directive that the BOP is required to "provide all prisoners with the opportunity to actively participate in [EBRR] programs . . . **throughout their entire term of incarceration**." 18 U.S.C. § 2621(h)(6).

Ten months after the BOP's final agency rule was published, the BOP adopted Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4). Pursuant to Program Statement 5410.01(5), "[a]ll sentenced inmates . . . will receive both a risk and need assessment." The PATTERN assessment is completed during the inmate's initial classification, which presumably happens prior to designation to a particular facility. The Program Statement provides that, in addition to PATTERN, the BOP will complete a Standardized Prisoner Assessment for Reduction in Criminality ("SPARC-13"), which the BOP describes as "the other half of the Bureau's FSA-approved Risk and Needs Assessment System." "After the inmate's arrival to their designated facility for service of their sentence and during the initial admission and orientation phase, the PATTERN and SPARC-13 assessments will be completed." Those assessments are then used to recommend EBRR programming for the inmate. Pursuant to Program Statements 5410.01(6), "an inmate cannot earn FTC when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility, regardless of where they are housed."

All of the foregoing statutes, administrative rules, and policy statements were in place before petitioner was sentenced on May 12, 2022. The BOP has calculated petitioner's FTC effective September 13, 2023. While the BOP managed to complete a PATTERN risk level to every inmate then in the system within 180 days after implementing PATTERN, apparently no such assessment was completed on petitioner until September 11, 2023, over 16 months after he was sentenced and remanded to the custody of the BOP.

The BOP contends that petitioner "was not committed to his designated institution until August 28, 2023," because after sentencing petitioner "was moved between various state and federal institutions on 'Administrative Admission,' 'In-Transit,' or 'Holdover' status." The Department of Justice's Assignment history report shows that petitioner was received on administrative admission on May 19, 2022. Presumably, the defendant was deemed still in the custody of the U.S. Marshals Service the week between sentencing and admission and that time was deemed time served for which he was given credit.

Between May 20 and August 19, 2022, petitioner was held in an "in-transit" facility. But it is important to note that during that time, he was being held at the behest of the BOP. His BOP status changed six times during that placement. On August 19, 2022, petitioner was placed at the Honolulu FDC (Federal Detention Center), a BOP federal detention center. https://www.bop.gov/locations/institutions/hon/, visited August 23, 2024. Petitioner remained at that facility for ten months, until June 29, 2023. His BOP status changed six times during that placement. From June 29 – July 11, 2023, petitioner was at an in-transit facility until he arrived at the Oklahoma City FTC (Federal Transfer Center), another BOP facility. https://www.bop.gov/locations/institutions/okl/, visited August 23, 2024. Petitioner was at Oklahoma City FTC from July 11 through July 18, 2023, when he was placed on the United States Marshals Service/BOP airlift, being placed at in-transit facilities as well between July 18 and August 23, 2023. From August 23 to August 28, 2023, petitioner was again housed at the Oklahoma City FTC until he arrived at the Yankton FPC (Federal Prison Camp).

The respondent contends that petitioner was moved between various state and federal institutions until his placement at Yankton FPC, implying that he was not always in BOP custody. That is a misleading assertion. From at least May 19, 2022, petitioner was always in the custody of the BOP, being placed at some facilities overnight during transfer and at other facilities for longer periods of time. He was never in state custody, even if he was housed in BOP contract facilities that were operated by state or county governments.

Respondent contends that the BOP's calculation of petitioner's First Step Act Time Credits is not subject to judicial review. Respondent further contends that, even if this Court entertains such a review, petitioner is not entitled to FTC during the first 16 months of his incarceration because (1) the statutorily required risk and needs assessment had not been completed and (2) petitioner did not successfully complete EBRR programming during those 16 months.

Respondent misstates one of the requirements – completion of EBRR programming. The rulemaking proceedings are clear that First Step Act Time Credits are <u>not</u> dependent upon completion of the programs. At least two Senators and one Congressman commented about a proposed rule that linked credits to completion of an EBBR program and participation in such program for a full day to gain credit. The BOP agreed that its proposed rule was inconsistent with the goals of the First Step Act and adopted a rule linking credit to successful participation in the daily requirements of the program. FSA Time Credits. 87 FR 2705 - 2707.

The record in this case raises serious concerns as to the BOP's conduct in this case. The record provided shows that, during the less than 12-month period the petitioner has been at Yankton FPC, he has earned 135 First Step Act Time Credits towards his earlier release. Had the BOP completed his assessments and provided programming opportunities during the 16 months petitioner was held at other BOP facilities, petitioner surely would have earned additional credits towards his earlier release.

Petitioner is proceeding *pro se* and would not have access to the materials needed or the legal knowledge to preserve claims related to the BOP's delay in complying with the Congression mandates of the First Step Act. Surely the BOP cannot refuse to comply with the directive to complete a risk and needs assessment and fail to offer EBRR programming for 16 months because it delayed in transferring petitioner to his designated facility.

Based upon the foregoing,

IT IS ORDERED that the Federal Public Defender for the District of South Dakota is hereby appointed to represent petitioner, review his case, and determine

whether to file an amended petition for a writ of habeas corpus or to respond to the motion to dismiss.

DATED this 3rd day of September, 2024.

BY THE COURT:

_[signature]_
CHARLES B. KORNMANN
United States District Judge